468 So.2d 692 (1985)
Phyllis GASPARD, Plaintiff-Appellant,
v.
TRANSWORLD DRILLING COMPANY, Defendant-Appellee.
No. 84-152.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
Rehearing Denied May 14, 1985.
*693 William P. Rutledge of Domengeaux & Wright, Lafayette, for plaintiff-appellant.
Deutsch, Kerrigan & Stiles, Chris Tompkins and Howard L. Murphy, New Orleans, for defendant-appellee.
Before GUIDRY, LABORDE and YELVERTON, JJ.
LABORDE, Judge.
Plaintiff Phyllis Gaspard filed suit under the Jones Act and general maritime law for the loss of society of her husband resulting from non-fatal personal injuries sustained by her husband while working aboard defendant's vessel. Defendant Transworld Drilling Company filed an exception of no cause of action, which was sustained by the trial judge. Plaintiff appeals. We affirm.
The chronology of three events is extremely important in this case. First, on April 25, 1980, plaintiff's husband was nonfatally injured while working as a derrick hand on defendant Transworld Drilling's Rig Number 68 offshore in the Gulf of Mexico. Undisputedly, plaintiff's husband was a "status seaman" aboard defendant's vessel at that time, and he was an employee of defendant. Therefore, the remedies applicable to seamen injury and death cases under the Jones Act and general maritime law apply to his injury. See Offshore Co. v. Robison, 266 F.2d 769 (5th Cir.1959). Second, on May 12, 1980, the United States Supreme Court issued its opinion in the case of American Export Lines, Inc. v. Alvez, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). Prior to the decision in Alvez, spouses and family members of fatally injured seamen could recover for loss of society[1] under general maritime law. Alvez extended this line of jurisprudence by establishing a cause of action under general maritime law for the recovery of loss of society damages by spouses and family members of non-fatally injured seamen. Third, on April 14, 1983, plaintiff filed suit in state district court in Lafayette, seeking damages for the loss of society *694 of her husband as a result of the drilling rig accident.[2] To recap: first, plaintiff's husband was non-fatally injured; second, the United States Supreme Court established, for the first time, an action for recovery of loss of society damages by family members of non-fatally injured seamen under the general maritime law; third, plaintiff filed this suit, seeking recovery under the cause of action established by the Supreme Court.
The only question before this court is whether the cause of action established by Alvez is retroactive for injuries that occurred before the date of the Alvez decision. The district judge ruled that the Alvez cause of action is not retroactive. He noted that two cases before the United States Court of Appeals for the Fifth Circuit had presented this precise issue, and that the Fifth Circuit had declined to apply Alvez retroactively in both cases. See Beltia v. Sidney Torres Marine Transport, Inc., 701 F.2d 491 (5th Cir.1983); Stretton v. Penrod Drilling Co., 701 F.2d 441 (5th Cir.1983) (both opinions issued same day by Judge Wisdom with Judges Randall and Tate on panel). He found these two decisions "persuasive," though not binding, and he ruled in accord with the Fifth Circuit cases. Plaintiff perfected this appeal.
We initially note that this matter is governed by federal law. Under federal law, there are two bases for claims against defendant arising from plaintiff's husband's injury.
First, there is the Jones Act, which is a federal statutory scheme modeled after the Federal Employers' Liability Act. The Jones Act provides recovery for a seaman premised upon the negligence of the seaman's employer. It is the exclusive action based in negligence for a seaman against his employer. The Jones Act explicitly provides only for pecuniary damages, and loss of society damages for family members as a jurisprudential additive has been consistently rejected. See Madore v. Ingram Tank Ships, Inc., 732 F.2d 475, 479 (5th Cir.1984). Thus, the Jones Act is inapplicable to the present matter.[3]
Second, there is the seaman's traditional remedy against his vessel for unseaworthiness resulting in the seaman's injury. The unseaworthiness doctrine is a creature of judge-made general maritime law, and subject matter jurisdiction over maritime cases is vested in the federal courts by Article III, section 2, of the United States Constitution. An action for unseaworthiness against a vessel in rem can be brought only in federal court; however, an unseaworthiness action (usually joined with a Jones Act claim) may be brought in state court against the vessel owner in personam. See 28 U.S.C. sec. 1333(1) (1976). Even though a seaman's unseaworthiness claim may be heard in state court, the state forum still must apply federal substantive maritime law, see, e.g., Romero v. International Term. Operating Co., 358 U.S. 354, 373 & n. 33, 79 S.Ct. 468, 480 & n. 33, 3 L.Ed.2d 368 (1959), in order not to do violence to the uniformity of maritime law. Uniformity is the key word: the primary benefit gained by vesting maritime jurisdiction in the federal courts is the preservation of common rules for the governance of the national and, indeed, international operations of shipping and other maritime concerns. That the "common rules" which have been developed to govern seamen's unseaworthiness actions emanate from judge-made law, not a federal statutory scheme, is of little importance. We still must look to federal law *695 for the resolution of the maritime issue before us. The federal law applicable to this case, represented by Alvez, Beltia, and Stretton, is the evolving general maritime jurisprudence in regard to familial claims for personal injury to a seaman caused by the unseaworthiness of a vessel. The federal courts bear primary responsibility for the evolution of this jurisprudence, but we are not precluded, solely because we are a state court, from forging ahead with our own contribution to this evolution in maritime jurisprudence. However, where, as here, the precise issue before us has been dispositively addressed in the intermediate federal appellate court that covers the same geographical area as this court, we should be extremely hesitant to differ with the federal court.
In matters of general maritime law, as plaintiff astutely notes, we are only "bound," in the strictest sense, by the decisions of the United States Supreme Court. Plaintiff argues that in this case, because the United States Supreme Court has not ruled on the issue, we must follow the pronouncements of the Louisiana Supreme Court that, generally, judge-made changes in judge-made law affording additional remedies and new causes of action are retroactive, especially if the affected action is personal, and the change in law does not alter established property rights. Defendant answers by noting that even though the Fifth Circuit case-law does not strictly bind this court, we still must follow the general maritime law, as gleaned from federal court decisions, and not the general pronouncements of the Louisiana Supreme Court on matters of state law. Defendant argues that the Beltia and Stretton decisions present the most authoritative statement of federal general maritime law on the issue before this court, and that this court should accept those decisions as controlling.
This court will follow Beltia and Stretton. We do so not because we are bound by those decisions, in the technical sense, but because we find that the uniformity of general maritime law is best served by following the rule established by our federal brethren. We express no view as to whether, in the absolute sense, the non-retroactivity rule established by the Fifth Circuit for cases of this nature is right or wrong. We note that, had plaintiff filed her suit in Lafayette's Federal District Court for the Western District of Louisiana, instead of Lafayette's State District Court for the Fifteenth Judicial District, the outcome indubitably would have been a dismissal of her cause of action under the rule established by the United States Court of Appeals for the Fifth Circuit. Many years ago, the Supreme Court decided that a state's substantive law should not be applied differently because a state law cause of action is heard in a federal court instead of the state's own forum. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We recognize the corollary; federal substantive law should not be applied differently because, between two equally available forums, a litigant files suit in the state court instead of the federal court.
Based on the above reasons, the judgment of the trial court is affirmed, at plaintiff Phyllis Gaspard's cost.
AFFIRMED.
NOTES
[1] "Society" is one of the three elements of damages recoverable by members of the injured seaman's family in death and (now) personal injury cases under the general maritime law. Society includes the familiar loss of consortium element, but it is broader, as it also includes the general love, companionship, and affection that the spouse and other family members lose as a result of a maritime injury or death. "Support" is simply the lost family income entailed by the injury or death, less sums that the injured or deceased party would have spent for personal reasons. In most injury cases, family support damages are subsumed under the seaman's recovery of lost future income. "Services" is a monetary award designed to replace the uncompensated work, guidance, and upkeep that the injured or deceased party formerly performed for the family (household maintenance, educational help for children, etc.), which ostensibly will, as a result of the injury or death, now have to be obtained from another source and at a price. For a general discussion of the "three Ss" of family recovery, see Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).
[2] The record does not reveal the disposition, if any, of other aspects of plaintiff's and her husband's potential claims against defendant. The only issue we consider is loss of society damages.
[3] An interesting question (which need not be resolved here) arises as to whether the family of one other than a seaman can recover society damages under a general maritime law theory of negligence, provided, of course, that the injured party falls within that class of persons who may pursue claims based on negligence under non-statutory, general maritime law. Cf. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).